**Advanced Marine Safety Services**
93 Old Main Road
North Falmouth, MA 02556

Theophilus Moniz, III                                             (508) 564-5620

Preliminary Report
July 19, 2005

The Kaplan/Bond Group
Davis B. Kaplan
88 Black Falcon Avenue, Suite 301
Boston, MA 02210

Re:    David Magee vs. F/V IT AIN'T EASY and Grce Fishing, Inc.
       Civil Action No. 04-cv-11215 RCL

Dear Mr. Kaplan:

       Per our conversations concerning the accident that occurred on or about
December 12, 2002 involving your client David Magee and the F/V IT AIN'T EASY and Grace
Fishing, Inc., I have reviewed the portion of the deposition of your client that you provided.  On
July 15, 2005 I interviewed David Magee on the telephone.

       Based on the above information, I believe that I have identified several unsafe conditions
existing on the F/V IT AIN'T EASY at the time of the incident with David Magee.  These
conditions include the following:

- Fatigue due to inadequate rest
- A drum of inadequate size
- Inadequate guards
- Lack of adequate deck non-skid
- Slippery deck due to poor housekeeping
- Slippery deck due to inadequate maintenance
- Inadequate lighting due to inadequate maintenance

Fatigue
       David Magee was serving as deckhand and cook on board the "IT AIN'T EASY."  He
had been working nine (9) hours on and three (3) hours off continuously for five (5) to six (6)
days.  This type of schedule does not provide for adequate time for an individual to rest.

The international maritime community has established very basic work standards to prevent the fatigue of seamen in the International Convention on Standards for Training, Certification and Watchkeeping for Seafarers, 1978, as amended in 1995. The resultant regulations are published in Title 46 Code of Federal Regulation, Subpart J. While this vessel is not subject to these regulations due to its size and trade, the regulations provide clear standards on the working conditions necessary to provide for adequate rest.

46 CFR 15.111(a) calls for a minimum of 10 hours of rest in any 24-hour period. Paragraph (b) requires that this rest may be divided into no more than two periods of which one must be at least 6 hours in length. Paragraph (d) requires that the minimum period of 10 hours of rest required may be reduced to not less than 6 consecutive hours as long as no reduction extends beyond 2 days and not less than 70 hours of rest are provided each 7-day period.

It is clear that the rest Mr. Magee was obtaining was well short of the standards mentioned above. I believe this lack of rest contributed to the incident that occurred to him.

Inadequate Drum Size

It is evident that the net drum was inadequate for the net and rolls that was being attempted to store on it. It is not normal for a deckhand to continuously work with the net to keep it on the drum. Mr. Magee detailed that the net was constantly in need of attention to keep it from coming off the drum. Earlier in this trip the twine had come off the drum enough to get caught in the drive chain. This caused the chain to break and caused the drum to be inoperable. Mr. Magee expressed that they were fortunate that a fishing vessel in the area was able to provide them with a master ink that was used to repair the chain.

The vessel had recently changed fisheries after relocating from the Virginia area to New England. This change of fisheries required a change in fishing gear. The new gear included large eighteen (18) inch rollers with a large net. He further stated that if the net came on to the drum perfectly, it all fit. This required the rollers to lay just right to economize drum space. In the normal course of retrieving the net this rarely happened. Hence, the deckhand had to work extra hard to handle the net trying to keep it on the drum.

It can be noted that the owners of the vessel have added an additional drum on the vessel to hold the rollers that indicates the drum was too small to handle both the net and these rollers.

Inadequate Guards

The condition described above is made more unsafe through the lack of guards on the moving equipment. With the net (twine) catching on the chain sprockets of the net drum it is evident that the chain lacked adequate guards to prevent this. The Atlantic Coast Fishing Vessel Safety Manual produced by Rhode Island Sea Grant in cooperation with the U.S. Coast Guard in 1991 recommends in section 8.1.1 that:

> "Proper operation includes the use of all safeguards provided with the equipment. Never remove safety guards or covers from mechanical equipment without permission of the captain and then only if the machinery is stopped."

It further notes the importance of guards in section 8.1.2:

> "Fence or guard engines, electric motors, gearing, chain and belt drives, friction clutches, and shafts that can cause injury to personnel, as long as the guards do not impede the safe operation of the vessel."

It appears that the lack of these guards presented an unsafe condition on the vessel resulting in the twine from the net becoming caught in the chain area and breaking the equipment. I believe that this condition made the effort to keep the net on the drum even more imperative and imparted an urgency to the situation that heightened the need for Mr. Magee's extra effort.

Inadequate Non-skid

It was evident from the information gathered that the decks in the area of the net drum lacked adequate non-skid to keep them from being slippery. It is obvious that it takes more effort to move about on a slippery surface than one that provides good traction. Once again the Atlantic Coast Fishing Vessel Safety Manual is very specific about the need for non-skid.

Section 2.4 recommends that "All vessels should be equipped with features to ensure the safety of the crew." Section 2.4.5 states: "Apply deck tiles, non-skid paint or gratings on walking and working deck, around hatches, doors and passageways, around deck and anchor winches and around the liferaft."

I believe that the lack of non-skid in the area contributed to the exertion Mr. Magee had to make in trying to keep the net on the undersized drum.

Slippery Deck/Poor Housekeeping

Mr. Magee noted that the deck in the area of the net drum was made even more unsafe due to the grease that was left on the deck when the chain on the drum broke. This chain is very greasy and during the effort to effect its repair some of this grease was on the deck.

The Atlantic Coast Fishing Vessel Safety Manual points out the importance of good housekeeping in section 2.3.6 (General Safety Tips) to "Clean up slippery deck, mop up spills as soon as possible, and flush fish slime and seaweed from the deck frequently."

I believe that grease from poor housekeeping in the area around the net drum contributed to the exertion Mr. Magee had to make in trying to keep the net on the undersized drum.

Slippery Deck/Leaky Machinery

Mr. Magee reported that the deck machinery leaked oil that made the decks slippery. In section 8.1.5 (Lubricating and Hydraulic Oil Systems) of the Atlantic Coast Fishing Vessel Safety Manual it is noted that "If there is a leak that can't be stopped immediately, find a means of catching and containing the fluid to prevent its spread." "*If leaks occur, they must be promptly reported and repaired, and spilled hydraulic fluid cleaned from the deck.*" The italics emphasis was provided by the producer of the manual.

I believe that the presence of hydraulic oil on the deck contributed to the exertion Mr. Magee had to make in trying to keep the net on the undersized drum.

Inadequate Lighting

Mr. Magee also reported that the vessel was equipped with four lights to illuminate the working deck area. At the time of this incident two of those lights did not operate. The lack of lighting made it more difficult to see how the net was winding onto the drum and delayed or required quicker reaction to correct the way the net was coming onto the drum. This increased the exertion needed to be made by Mr. Magee as he worked on deck at the time of this incident.

The Atlantic Coast Fishing Vessel Manual points out the importance of good housekeeping in section 2.3.6 (General Safety Tips) to "Make sure all work spaces, passageways, and doors are well-lighted . . ." I believe that four lights provided adequate light to illuminate the working deck and two did not.

I believe that the lack of lighting in the area contributed to the exertion Mr. Magee had to make in trying to keep the net on the undersized drum.

**OPINION**

It is my opinion that the F/V IT AIN'T EASY was operating in an unsafe condition. It was operating with a net drum that was too small to safely accommodate the fishing gear in use at the time of the incident. It is also my opinion the condition of the area that Mr. Magee was unsafe due to inadequate guard on the chain drive, the poor housekeeping practice for failing to clean up the grease left in repairing the broken chain, the poor housekeeping practice in failing to clean up the leaking hydraulic oil and the poor maintenance practices of letting the hydraulic leaks to continue and the failure to repair the inoperable deck lights.

Sincerely,

Theophilus Moniz, III

# Advanced Marine Safety Services

93 Old Main Road
North Falmouth, MA 02556

**Theophilus Moniz, III**          **MARINE ENGINEER**          **(508) 564-5620**

Retired from the Coast Guard in 1990, I have continued to be employed in various marine
engineering and maritime related capacities as a marine consultant and Marine Engineer.

## MARINE EXPERIENCE

**Woods Hole Oceanographic Institution** - 11/93 to Present Marine Engineer

- Project manager for $3.0 million refit of Research Vessel
- Project Assistant for $51 million Navy Construction of Research Vessel
- Port engineer related duties for Research Vessels
- Assist in Management of Approximately $11.0 operating budget for 3 ships

**Advanced Marine Safety Services** - 4/90 to 10/93(full time) to Present(part time) Consultant
Owners Rep for $2.5 million refit of an Oceanographic Vessel. Designed and obtained approval
for various engineering systems on several inspected and ABS classed commercial vessels.
Provided regulatory consulting for $22 million refit of 2 Oceanographic Vessels. Provided
regulatory assistance activating 6 RRF vessels. Expert investigation and testimony in vessel
accidents including two Oceanographic vessel accidents and several fishing vessel accidents.
Provided data analysis of numerous Coast Guard databases including tanker casualty analysis, oil
spill analysis, documentation queries and tank barge analysis. Helped to establish and operated a
C.G. approved marine firefighting course.

**Marine Safety Office Providence, RI** - 7/87 to 4/90 - Chief, Inspection/Investigation Dept
Administered CG commercial inspection activity in S.E. Mass. and Rhode Island.
Inspected vessels with particular or unusual problems to determine fitness for service.
Oversaw the new construction of vessels made of steel, aluminum and fiberglass.

- Involved in the investigation of approximately 250 accidents each year.
- Conducted formal investigation into the sinking of the inspected vessel BRONX QUEEN
  and participated in 3 other formal investigations involving the NTSB.
- Completed dozens of narrative investigative reports.
- Spearheaded industry awareness of fishing vessel safety including presentations on
  EPIRBs and recommended fishing vessel safety standards; held meetings with industry
  leaders; and provided CG presence at F/V expos to answer safety related questions.

**Marine Investigation Division, Headquarters, Washington, DC** - 7/83 to 7/87
Conducted analysis of the data collected on commercial vessel accidents including analysis of
fishing vessel accidents, accidents on the Mississippi River, tanker explosions, and accident
distribution throughout the country. Reviewed over 20,000 investigations for completeness
through final coding. Conducted numerous data queries dealing with a broad scope including
geographical areas, vessel, nature and cause specific questions. Provided training on

investigative policy at CG training center.  Coordinated Commandant's final position on hundreds of narrative investigative reports.

Theophilus Moniz, III                                                      Page 2

Division training officer responsible for review of final investigator qualifications, included job task analysis, establishing standards and guidelines, and publishing final qualification booklets. Provided casualty data extraction to support several regulatory projects.

**Marine Safety Office Boston,** MA - 7/79 to 7/83

  As Chief, Inspection/Investigation Dept 1 year
  - Similar inspection and investigative activities as in Providence.
  - Responsible for commercial vessel movement including the boarding of foreign tank ships, compliance with pollution regs, and ice operations in the Cape Cod Canal.
  - Provided new construction review and inspection of 4 LNG tankers and 2 oil barges.
  - Reviewed and inspected the reconstruction and reflagging of the tankship SEATIGER which had exploded.  Reconstruction involved 9,000 tons of steel work.

**USCGC DECISIVE** - 7/77 to 7/79 - Engineering Officer
  - Responsible for the operation, repairs, and periodic maintenance of this diesel powered, controllable-pitched, twin-screwed vessel.
  - Administered a $1 million, 14 week, shipyard rehabilitation.

**Marine Safety Office San Francisco,** CA - 7/73 to 7/77

Obtained qualifications as Boiler Inspector, Hull Inspector, Barge Inspector, Drydock Inspector, Small Passenger Vessel Inspector, Casualty Investigator, Suspension & Revocation Investigator, Pollution Investigator, and various licensing qualifications.  Conducted various inspections as the resident inspector at several repair yards conducting repairs and periodic inspections including drydock, topside, and machinery inspections on various deep draft vessels.

**BOUTWELL** - Assist. Engineering Officer, 1/72 to 7/73
  - Qualified as a watch standing engineer of this diesel and gas turbine powered vessel.
  - Qualified as a deck watch officer.
  - Qualified as a deck watch officer.

**ESCANABA** - Student Engineer 7/70-1/72
  - Qualified as a watch standing engineer of this steam turbine powered vessel.
  - Qualified as a deck watch officer.

## EDUCATIONAL BACKGROUND

1970   U. S. Coast Guard Academy           Bachelor's of Science
1977   California State University, Hayward   Master's Public Administration

Numerous Coast Guard Marine Safety related courses including Investigation, Inspection and Pollution courses.

# Advanced Marine Safety Services

93 Old Main Road
North Falmouth, MA 02556

## Fee Schedule 2005

Hourly Rate:
- Investigation, analysis, meetings report writing      $75.00
- Testimony (including depositions)      $125.00

(Hourly rate is applied from Office in North Falmouth to North Falmouth)

Transportation:
- Mileage @ 40.5 cents per mile
- Parking and tolls at cost

Other expenses:
- At cost (no mark up)

Payment is expected 30 days of invoice.